299 P.2d 643

**In the Matter of W. J. VAN SPANCKEREN, Member of the State Bar of Arizona, Respondent.**

No. 6164.

Supreme Court of Arizona.

July 10, 1956.

Mark Wilmer, Phoenix, for respondent.

George Read Carlock, Phoenix, for State Bar.

PER CURIAM.

Disciplinary proceedings were instituted against respondent, as a member of the State Bar of Arizona, before the local administrative committee for district No. 4 of the State Bar. He was charged in two counts with having violated Canons 11 and 21 of the Canons of Professional Ethics of the legal profession as adopted by the American Bar Association and the Supreme Court of Arizona. These Canons read as follows:

No. 11 "Money of the client or collected for the client or other trust property coming into the possession of the lawyer should be reported and accounted for promptly, and should not under any circumstances be com-

mingled with his own or be used by him."

No. 21 "It is the duty of the lawyer not only to his client, but also to the Courts and to the public to be punctual in attendance, and to be concise and direct in the trial and disposition of causes."

In haec verba the two charges were:

"1. Violation of Canon 11, in that he, the said W. J. Van Spanckeren, did, during the month of June, 1950, receive from one Clement A. Sample the sum of $1500, plus certain accrued interest, in his capacity as attorney for Lois Mays, Executrix of the Last Will and Testament of James M. Mays, deceased, and did thereafter fail promptly to report and account for the same, and did commingle the same with his own funds."

"2. Violation of Canon 21, in that having been employed in 1930 by one Eldo Trotter to perform the legal services necessary to the administration of the estate of Willie A. Trotter, deceased and having undertaken said employment, he failed to use proper expedition and direction in performing said services, and had not completed the performance of said services at the time of his discharge from such employment in 1952."

The local administrative committee found respondent guilty on both counts, and recommended to the Board of Governors of the State Bar that as to each count respondent be disciplined by suspension as a member of the State Bar for not less than one year. The Board of Governors approved the findings of the local administrative committee, and recommended to this court that notwithstanding the recommendation of the local administrative committee for suspension for one year the respondent be merely reprimanded.

### Count I.

As to count 1, the facts briefly are that in March, 1950, respondent was employed to probate the estate of James M. Mays by his surviving wife who acted as executrix. The will was admitted to probate and an inventory and appraisal filed which showed an estate of somewhat over $53,000 plus an additional joint savings account of $10,000.

Included in the assets of the estate was a note and realty mortgage which had originally belonged to respondent but which he had sold to James M. Mays shortly prior to his death, upon which there was an unpaid balance due of $1,500, plus accrued interest.

Shortly after or at the time the inventory was filed, Mrs. Mays inquired as to the legal fees involved and respondent advised

her as to the usual percentage charge. Mrs. Mays considered the fee set as excessive but gave respondent $500 to apply on the fee in addition to a payment of $150 she paid when the petition to probate the will was filed.

In June of 1950 Samples (mortgagors) paid to Van Spanckeren the balance due on the note and mortgage. Of this payment Mrs. Mays had no knowledge. Presumably when a payment of interest or principal came due in July and again in January respondent paid over to Mrs. Mays the interest and principal payment in accordance with the terms of the note. In March of 1951 Mrs. Mays learned that the Samples had paid the note and mortgage and asked respondent concerning it. He told her the money had been paid but that he was holding it to secure his fee. They then discussed this matter and agreed on a fee of $1,500 and Mrs. Mays told respondent to go ahead and close the estate. He prepared assignments for her children to execute setting their interest in the estate over to Mrs. Mays and delivered them to her.

Briefly summarized these facts disclose that respondent received $1,500 belonging not to himself but to his client; that he deliberately did not report receipt of this money; that he thereafter, on two occasions, deceived his client by making it appear that he had collected two annual payments of principal and/or interest which he paid over to his client; and that the $1,500 was turned over to his client only after the court had ordered him to do so and then not until a contempt citation had been issued because of respondent's failure to obey the court's order.

In these circumstances it indubitably appears that respondent failed to live up to the requirements of Canon 11 that "Money collected for the client * * * should be reported and accounted for promptly * * *."

The respondent's purported reason for this stubborn reluctance to turn loose of his client's money, even when ordered by the court to do so, is that he claimed a lien on it for a claimed fee. Several facts stand out in this connection:

1. The amount of the respondent's fee was subject to the court's control.

2. There was never any doubt that the estate included sufficient assets for the payment of any fee the court might conceivably fix.

3. Neither the amount of the fee nor its payment was placed in the least question by any views Mrs. Mays might have had as to its reasonableness.

4. After the respondent and Mrs. Mays had agreed on a fee of $1,500, of which $650 had been paid, the respondent still did not account to Mrs. Mays for the $650 in his possession and as to which he had not made any claim.

The picture presented by the facts stipulated to by the respondent is not that of a lawyer legitimately protecting his right to just compensation by honestly and openly asserting a lawful lien on client's property in his possession. Rather, the picture is one of a lawyer who, although assured of a just and obviously collectible fee to be fixed by a court, undertakes affirmatively to conceal from his client the fact that he has his client's property and thus to gain for himself a secret and dishonest advantage never sanctioned by any law, and certainly not sanctioned by the pertinent Canon of Ethics.

## Count II.

This proceeding presents these questions: is a probate matter a "cause" within the contemplation of Canon 21? May a lawyer be disciplined under Canon 21 for the negligent handling of a probate matter when his conduct shows him to have been grossly negligent and guilty of rank procrastination therein?

These questions are pointed up by the fact situation here presented and respondent's involvement therein. In 1930 Van Spanckeren undertook to probate the estate of a Mrs. Trotter by filing a petition to probate. An inventory and appraisement was timely filed. The petition shows that deceased was survived by her husband and two boys; aged fourteen and nine years.

The order appointing the administrator required that a $2,000 bond be furnished. Respondent made no attempt to close the estate for a period of twenty-two years, although repeatedly requested to do so. Annually, for twenty-two years, the administrator paid a $10 premium fee for administrator's bond. His excuse for not bringing the probate to a conclusion was that he decided to wait until 1943 when the youngest child would be of age, at which time he contemplated having the children assign their interest to their father. Another nine years transpired before he did anything.

Respondent suggests that a "cause" within the contemplation of Canon 21 is a "case", and that "clearly a probate matter is not a *case—a cause of action,* and that you simply do not try a matter in probate". Respondent's position is that Canon 21 is inapplicable to the charge contained in Count II. This argument, if accepted, would lead to the peculiar result that a lawyer could be disciplined—even disbarred—for failing to be concise and direct in the disposition of other kinds of court proceedings but could not be reprimanded for the most inexcusable delay in the disposition of probate matters. The unreasonableness of such a proposition is patent. The evil sought to be enjoined is

58

as real in one situation as in the other—we interpret the word "causes" as used in the Canon to refer to any legal matters or proceeding in court, and is synonymous with "case", "cause", "matter" and "proceedings". See Tolle v. Tolle, 1907, 101 Tex. 33, 104 S.W. 1049, where the court held that a probate proceeding was a cause. Cf. Gibson v. Sidney, 1896, 50 Neb. 12, 69 N.W. 314.

██ Respondent's inattention to his client's business is shocking and deserves severe censure. It is such conduct that brings the majesty of the law and its guardians into disrepute. Such conduct cannot go unnoticed or excused.

It is our considered opinion that the charges were amply proved and discloses in the respondent's character a lack of understanding that makes him unfit to continue in the profession. Accordingly, it is the order of this court that respondent, W. J. Van Spanckeren, be indefinitely suspended from the practice of law in this state.

LA PRADE, UDALL, WINDES and PHELPS, JJ., concur.

STRUCKMEYER, J., disqualified himself from any consideration of this matter.